1999-NMCA-016

973 P.2d 880

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Daniel PORRAS, Defendant–Appellant.**

**No. 18890.**

Court of Appeals of New Mexico.

Dec. 23, 1998.

Tom Udall, Attorney General, Anita Carlson, Ass't Attorney General, Santa Fe, for Appellee.

Phyllis H. Subin, Chief Public Defender, Karl Erich Martell, Ass't Appellate Defender, Santa Fe, for Appellant.

## OPINION

PICKARD, Judge.

{1} Defendant, Daniel Porras, appeals from the trial court's second amended judgment, sentence, and conviction, sentencing him to three years of imprisonment on two counts of fraudulent use of a credit card and an additional eight years as a habitual offender with three prior felony convictions, for a total sentence of eleven years of imprisonment. The sole issue that Defendant raises on appeal is whether the trial court violated Defendant's constitutional right not to be placed in jeopardy twice for the same offense when it increased Defendant's sentence on the underlying charges after the habitual offender trial. On the facts of this case, we determine that the trial court did violate Defendant's double jeopardy rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article II, Section 15 of the New Mexico Constitution. We therefore remand this case to the trial court for imposition of the original sentence on the underlying charges.

## FACTS AND PROCEDURAL HISTORY

{2} On June 4, 1997, Defendant pled guilty to one count of fraudulent use of a credit card to obtain merchandise valued at $375 .02, a third degree felony, and one count of fraudulent use of a credit card to obtain merchandise valued at $54.46, a fourth degree felony. The trial court accepted the plea and continued Defendant's bond until sentencing. On June 20, 1997, Defendant moved to withdraw his guilty plea. The motion was denied on June 23, 1997, and bond was again continued; however, Defendant was also arraigned at this time on the supplemental information concerning the habitual offender charge.

{3} On July 7, 1997, a sentencing hearing was held, at which time the State was not prepared to prove Defendant's prior felony convictions. The trial court proceeded to sentence Defendant on the underlying charges to three years on count one and eighteen months on count two, to be served concurrently, and suspended all of the sentence except for ninety days to be served in the Eddy County Detention Center. The trial court then immediately remanded Defendant to the custody of the sheriff.

{4} Defendant remained in custody until August 18, 1997, at which time a trial was held on the habitual offender charge. The trial court determined that there was sufficient evidence to declare Defendant to be a habitual offender with three prior felony convictions. The trial court also stated that it did not feel that Defendant was remorseful and that it was convinced Defendant would commit additional crimes if released. The trial court, therefore, changed the sentence on the underlying charges from concurrent to consecutive and increased the ninety days to four and one-half years. With an eight-year enhancement on each consecutive charge, the total term of imprisonment was twenty and one-half years.

{5} Defendant questioned the increase in sentence on the underlying charges and, on September 8, 1997, filed a motion to modify his sentence arguing that he had already

begun to serve the ninety-day sentence and therefore the trial court was precluded from increasing his sentence on the underlying charges. At a hearing on September 15, 1997, the trial court denied Defendant's motion; however, an amended judgment and sentence filed on September 24, 1997, changed the sentence on the underlying charges back from consecutive to concurrent, resulting in a total sentence of eleven years. Because Defendant had already filed a notice of appeal on September 3, 1997, divesting the trial court of jurisdiction to make this modification to Defendant's sentence, this Court issued a limited remand to the trial court to again rule on the September 8, 1997, motion to modify sentence. On January 5, 1998, an extremely brief hearing was held on the motion to modify sentence which was again denied by the trial court. On January 13, 1998, the trial court filed a second amended judgment, sentence, and conviction, sentencing Defendant concurrently to three years on the underlying charges and adding one eight-year habitual offender enhancement for a total of eleven years.

**DISCUSSION**

■ {6} Defendant contends that the trial court acted illegally when it ultimately increased his sentence from ninety days to three years on the underlying felony charges. In support of his contention, Defendant argues that once he began serving the original ninety-day sentence, federal and state double jeopardy principles precluded the trial court from increasing the sentence on the underlying charges, regardless of whether the sentence could be increased based upon Defendant's habitual offender status. The State answers that Defendant had no expectation of finality in an oral statement of a "partial" sentence when Defendant knew that a further hearing on the habitual offender charge was required in order to complete the sentencing process.

■ {7} It is a well-established principle of New Mexico law that a trial court generally cannot increase a valid sentence once a defendant begins serving that sentence. *See State v. Cheadle*, 106 N.M. 391, 394, 744 P.2d 166, 169 (1987); *State v. Allen*, 82 N.M. 373, 374, 482 P.2d 237, 238 (1971);

*State v. Verdugo*, 79 N.M. 765, 766, 449 P.2d 781, 782 (1969); *State v. Baros*, 78 N.M. 623, 625–26, 435 P.2d 1005, 1007–08 (1968). A limited exception to this rule applies when the initial sentence is illegal or improper. *See State v. Acuna*, 103 N.M. 279, 280, 705 P.2d 685, 686 (Ct.App.1985). An invalid sentence may be corrected by imposition of a proper sentence even though the defendant has begun service of the original sentence, and even if the proper sentence is more onerous. *See id.; see also Bozza v. United States*, 330 U.S. 160, 166–67, 67 S.Ct. 645, 91 L.Ed. 818 (1947) (a sentence may be increased if necessary to comply with statute).

■■ {8} A different rule applies, however, in the situation of habitual offender enhancement. A defendant's sentence may be enhanced as a habitual offender at any time prior to the expiration of the underlying sentence or period of parole. *See, e.g., State v. Roybal*, 120 N.M. 507, 510, 903 P.2d 249, 252 (Ct.App.1995); *State v. Gaddy*, 110 N.M. 120, 122, 792 P.2d 1163, 1165 (Ct.App.1990). For purposes of double jeopardy, when a defendant is proven to be a habitual offender, enhancement is authorized, and the defendant's expectation of finality in the underlying sentence as the only sentence he may receive is destroyed. *See id.* at 123, 792 P.2d at 1166. The enhanced sentence then supplants the original sentence and results in one, single, longer sentence for the crime. *See State v. Freed*, 1996–NMCA–044, ¶ 12, 121 N.M. 569, 915 P.2d 325; *State v. Mayberry*, 97 N.M. 760, 763, 643 P.2d 629, 632 (Ct.App.1982).

{9} The State contends that the July 7th sentence on the underlying charges was not a complete sentence until the August 18th habitual offender trial and enhanced sentencing was completed. The State, therefore, argues that, since the Defendant knew that there would be additional proceedings involving the habitual offender charge, Defendant did not have a reasonable expectation of finality in any part of the sentence. In support of its argument, the State cites several federal and out-of-state cases in which the defendant was determined not to have a reasonable expectation of finality in the length of the sentence, even though the defendant had already be-

gun service of the sentence. *See Pennsylvania v. Goldhammer*, 474 U.S. 28, 30, 106 S.Ct. 353, 88 L.Ed.2d 183 (1985) (allowing federal appellate courts to change the sentence of those considered a "dangerous special offender" without violating double jeopardy); *United States v. DiFrancesco*, 449 U.S. 117, 139, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980) (same); *State v. Christensen*, 270 N.J.Super. 650, 637 A.2d 956, 959 (N.J.Super.Ct.App.Div.1994) (holding that a defendant has no expectation of finality where statute allows government right to appeal length or type of sentence). Further, the State relies on the New Mexico cases that stand for the proposition that there is no double jeopardy violation in sentence enhancement for habitual offender purposes. *See Freed*, 1996–NMCA–044, ¶ 12, 121 N.M. 569, 915 P.2d 325; *Roybal*, 120 N.M. at 510, 903 P.2d at 252; *Mayberry*, 97 N.M. at 763, 643 P.2d at 632. We do not find the State's arguments persuasive.

{10} Though there may be certain situations under federal law or the laws of other states in which a valid sentence may be increased after a defendant has begun service, such as a situation where the government has a right to appeal the length or type of a sentence as in *Goldhammer, DiFrancesco* and *Christensen*, the State does not have the right under New Mexico law to appeal an otherwise valid sentence. As noted by our Supreme Court in *Cheadle*,

neither *DiFrancesco* nor *Goldhammer* overrules our decisions in *Baros, Verdugo* or *Allen*, and ... as a result it is still improper for a trial court in New Mexico to "set aside a valid sentence after a defendant has been committed thereunder, and impose a new or different sentence increasing the punishment."

106 N.M. at 394, 744 P.2d at 169 (quoting *Baros*, 78 N.M. at 626, 435 P.2d at 1008).

{11} Furthermore, though habitual offender proceedings do result in a single, enhanced sentence for the underlying crime if the prior offenses are proven, the proceedings involving the underlying charges and the proceedings involving the habitual offender charges are separate in New Mexico. *See generally Gaddy*, 110 N.M. at 122–23, 792 P.2d at 1165–66. As recognized by this Court in *Gaddy*, up to the point that a defendant's status as a habitual offender is proven, "anything could happen in the habitual proceedings—the state could decide not to pursue them, or fail to prove its case." 110 N.M. at 123, 792 P.2d at 1166.

{12} Defendant does not contest the eight-year enhancement of his sentence, only the increase in the underlying sentence from ninety days to three years. For the reasons expressed in *Gaddy*, anything could also have happened in this case before the State proved the habitual charge against Defendant. The fact that the State was able to prove three prior felonies and obtain an eight-year enhancement of Defendant's sentence should not affect the underlying ninety-day sentence.

{13} Under the facts of the present case, we hold that the Defendant did have a reasonable expectation of finality in the underlying sentence once he had begun to serve the ninety-day sentence in the Eddy County Detention Center. Defendant's reasonable expectation in the finality of the length and structure of the underlying sentence, as an underlying sentence, exists regardless of whether that sentence is ultimately enhanced.

{14} The State also argues that Defendant did not have a reasonable expectation of finality in the trial court's July 7th sentence because it had not been reduced to writing at the time of the August 18th habitual offender trial. We are also unpersuaded by this argument. In *State v. Rushing*, 103 N.M. 333, 334, 706 P.2d 875, 876 (Ct.App.1985), this Court reaffirmed the principle in New Mexico that an oral pronouncement of sentence is not a final judgment and is subject to change until reduced to writing and filed. *See also State v. Diaz*, 100 N.M. 524, 525, 673 P.2d 501, 502 (1983). The situation in Defendant's case, however, can be distinguished from the situation in *Rushing*. In *Rushing*, we held that, on the facts of that case, the defendant had not begun service of his oral sentence such that the trial court could not later increase that sentence in the written judgment. *See id.* at 335, 706 P.2d at 877. There, the

defendant had merely reported to the probation office to sign the standard probation forms and paid the probation fees. *See id.* It also had been brought to the attention of the trial court in that case that the defendant had not been truthful at the initial sentencing hearing, and the State had filed a motion to reconsider the sentence, which the defendant was aware of, before the defendant had appeared at the probation office to sign the probation paperwork. *See id.* Though it is true in the present case that Defendant's sentence on the underlying charges had not been reduced to writing at the time of the habitual offender trial, Defendant had begun service of the ninety-day underlying sentence when the trial court remanded him to the custody of the sheriff after the July 7th hearing. We therefore hold that, on the facts of this case, Defendant had a reasonable expectation in the finality of the oral sentence when he was incarcerated on that sentence, regardless of the fact that it had not been reduced to writing.

## CONCLUSION

{15} The sentence is vacated, and this case is remanded to the trial court for the purpose of re-imposing the original ninety-day sentence on the underlying charges. Defendant's ninety-day sentence may then be enhanced by eight years as a habitual offender for a total sentence of eight years and ninety days minus credit for all time already served by Defendant.

{16} **IT IS SO ORDERED.**

ALARID and ARMIJO, JJ., concur.